IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| REX ALLEN FREDERICKSON, <br><br> Plaintiff, <br><br> v. <br><br> DETECTIVE TIZOC LANDEROS, DETECTIVE SCARPETTA, AND OTHER UNIDENTIFIED OFFICERS OF THE JOLIET POLICE DEPARTMENT; DETECTIVE BRICK, DETECTIVE TALBOT, SERGEANT GUNTY AND OTHER UNIDENTIFIED OFFICERS OF THE BOLINGBROOK POLICE DEPARTMENT, <br><br> Defendants. | Case No. 1:11-cv-03484 <br><br> Honorable Thomas M. Durkin |

**DEFENDANTS DETECTIVE BRICK, DETECTIVE TALBOT, AND THE VILLAGE OF BOLINGBROOK'S 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF THEIR AMENDED MOTION FOR SUMMARY JUDGMENT ON ALL COUNTS OF THE THIRD AMENDED COMPLAINT**

NOW COMES Defendants DETECTIVE JOSEPH BRICK, DETECTIVE SEAN TALBOT ("the Bolingbrook Police Officers"), and the VILLAGE OF BOLINGBROOK (erroneously sued as the BOLINGBROOK POLICE DEPARTMENT) (collectively, "the Bolingbrook Defendants"), by their counsel, Stephen R. Miller, Nikoleta Lamprinakos, and M. Elysia Baker of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., and for their Rule 56.1 Statement of Undisputed Material Facts in Support of their Amended Motion for Summary Judgment on All Counts of the Third Amended Complaint of Plaintiff REX ALLEN FREDERICKSON ("Plaintiff") state:

I. **Exhibits to this Statement of Undisputed Material Facts**

The following pleadings and documents are referenced in this Rule 56.1 Statement of Undisputed Material Facts and/or attached as indicated:

1. The Third Amended Complaint ("Complaint") (Doc. 115);

2. The transcript of the deposition of Plaintiff is attached as Exhibit A (hereafter, "Pl. Dep.");

3. The transcript of the deposition of Diane Kloepfer is attached as Exhibit B (hereafter, "Klopfer Dep.");

4. The transcript of the deposition of Bolingbrook Police Officer Sean Talbot is attached as Exhibit C (hereafter, "Talbot Dep.");

5. Plaintiff's February 9, 2011, sex offender registration form (RF 00609) is attached as Exhibit D;

6. Plaintiff's February 16, 2011 sex offender registration form (RF 01629-01630) is attached as Exhibit E;

7. The transcript of the deposition of Bolingbrook Deputy Chief of Police Ken Teppel is attached as Exhibit F (hereafter, "Teppel Dep.");

8. The transcript of the deposition of Joliet Police Officer Tizoc Landeros is attached as Exhibit G (hereafter, "Landeros Dep.");

9. The transcript of the deposition of Joliet Police Officer Moses Avila is attached as Exhibit H (hereafter, "Avila Dep.");

10. The transcript of the deposition of Nicole Wlodarski is attached as Exhibit I (hereafter, "Wlodarski Dep.");

11. The transcript of the deposition of Bolingbrook Police Sergeant Craig Gunty is attached as Exhibit J (hereafter, "Gunty Dep.");

12. The transcript of the deposition of Bolingbrook Police Sergeant Joseph Brick is attached as Exhibit K (hereafter, "Brick Dep.");

13. The transcript of the deposition of Juli Coughlin is attached as Exhibit L (hereafter, "Coughlin Dep."); and

14. The transcript of the deposition of Bolingbrook Police Officer Nicholas Schmidt is attached as Exhibit M (hereafter, "Schmidt Dep.").

**II.     Description of the Parties, Venue and Jurisdiction**

1. Plaintiff is a convicted sex offender who is required by the *Illinois Sex Offender Registration Act*, 730 ILCS 150/1 *et seq.* ("SORA"), to register with his local police department. (Complaint ¶ 17.)

2. Prior to and during February 2011, Plaintiff asserted that he was homeless and residing in and around Joliet, Illinois. (Complaint ¶ 20.)

3. In February 2011, Plaintiff sought to register pursuant to SORA in Bolingbrook, Illinois. (Complaint ¶ 35; Ex. A, Pl. Dep. 47.)

4. The Bolingbrook Police Officers are citizens of Illinois. (Complaint ¶¶ 13-16.)

5. Venue is appropriate in this judicial district. (Complaint ¶ 8.)

6. This Court has jurisdiction over Plaintiff's claims in Counts I through IV which are brought pursuant to 42 U.S.C. §§ 1983 and 1985. The Court has supplemental jurisdiction over Count V pursuant to 28 U.S.C. § 1367 (Complaint ¶¶ 6-7.)

**III.    Undisputed Material Facts**

    **A.     The sex offender registration process pursuant to SORA.**

7. The SORA registration process requires a convicted sex offender to report to his local law enforcement agency and provide the information required on the Illinois sex offender registration form. (Ex. B, Kloepfer Dep. 10-11; Ex. C, Talbot Dep. 57-58; Exs. D and E.)

8. After receiving the SORA-required information from the sex offender, the local law enforcement agency enters that information into the Illinois Law Enforcement Agencies Data System ("LEADS"). 730 ILCS 150/8(a); (Ex. B, Kloepfer Dep. 10; Ex. F, Teppel Dep. 92-94, 102-105; Ex. G, Landeros Dep. 73.)

9. As a result, every sex offender required to register pursuant to SORA has an electronic file in LEADS. (Ex. B, Kloepfer Dep. 10; Ex. G, Landeros Dep. 73, 255-56.)

10. Only one law enforcement agency may enter a sex offender's registration into the sex offender's LEADS file. The law enforcement agency with that ability "owns" the sex offender's LEADS file. (Ex. F, Teppel Dep. 92-94, 149-150; Ex. H, Avila Dep. 80; Ex. I, Wlodarski Dep. 85, 99-100.)

11. Until the sex offender's registration information is entered into LEADS, the registration is not complete. This means that the law enforcement agency that "owns" the sex offender's registration file is the only law enforcement agency that can complete a registration for that sex offender. (Ex. C, Talbot Dep. 27-28; Ex. F, Teppel Dep. 92-94, 102, 148-150; Ex. G, Landeros Dep. 73; Ex. H, Avila Dep. 80; Ex. I, Wlodarski Dep. 86-87, 139.)

12. A local law enforcement agency that does not "own" the sex offender's LEADS file can add a narrative "update" to the sex offender's LEADS file stating that the sex offender presented himself for registration purposes. An "update," however, does not complete the sex offender's registration or satisfy SORA's registration requirement. (Ex. B, Kloepfer Dep. 21, 26; Ex. F, Teppel Dep. 94, 105, 148-151, 183, 190.)

13. SORA requires the law enforcement agency with ownership of the sex offender's LEADS file to investigate the accuracy of the information provided by the sex offender, including the location of his residence. (Ex. C, Talbot Dep. 43-44; Ex. F, Teppel Dep. 19; Ex. H, Avila Dep. 50, 68-69; Ex. J, Gunty Dep. 39; Ex. K, Brick Dep. 87.)

**B.    The process for transferring "ownership" of a sex offender's LEADS file from one law enforcement agency to another.**

14. At all relevant times, a law enforcement agency that does not own the sex offender's LEADS file cannot complete a registration for that sex offender without the law enforcement

4

agency that "owns" the LEADS file first releasing it. (Ex. C, Talbot Dep. 28; Ex. F, Teppel Dep. 102-105, 113.)

15. A sex offender wishing to move his residence from within the jurisdiction of one law enforcement agency to an address within the jurisdiction of another must advise his home law enforcement agency of his intent to move and identify his new address. (Ex. C, Talbot Dep. 26-27; Ex. F, Teppel Dep. 92-94, 102-109; Ex. G, Landeros Dep. 87-90; Ex. H, Avila Dep. 38-42.)

16. Upon receipt of this information, the sex offender's home law enforcement agency will contact the law enforcement agency with jurisdiction over the sex offender's intended new address and advise that agency of the sex offender's planned move. (Ex. C, Talbot Dep. at 26-27, 48-49; Ex. F, Teppel Dep. 92-94, 102-109; Ex. G, Landeros Dep. 87-90; Ex. H, Avila Dep. 41-42.)

17. The home law enforcement agency will then complete the sex offender's registration in LEADS and also add an "update" identifying the sex offender's new address. The home law enforcement agency will then give the sex offender a copy of his LEADS registration containing the update regarding his new address to present to the law enforcement agency with jurisdiction over that location when the sex offender first registers there. (Ex. F, Teppel Dep. 102-105, 113, 148-151; Ex. H, Avila Dep. 38-42, 99.)

18. Once the sex offender initiates the registration process with the new local law enforcement agency, the new law enforcement agency will request that the law enforcement agency with ownership the sex offender's LEADS file release the file. (Ex. G, Landeros Dep. 78; Talbot Dep. 26-27; Ex. F, Teppel Dep. 102-109; Ex. H, Avila Dep. 38-42, 99.)

19. Once the law enforcement agency releases the sex offender's LEADS file, the new home law enforcement agency may take ownership of it and complete the sex offender's

registration, and is now responsible for the sex offender. (Ex. B, Kloepfer Dep. 21, 26, 23, 53; Ex. C, Talbot Dep. 26-28; Ex. F, Teppel Dep. 102, 105-109, 113; Ex. I, Wlodarski Dep. 95-96, 142-143.)

### C. The Bolingbrook Police Department's SORA registration process in February 2011.

20. In February 2011, when a sex offender came into the Bolingbrook Police Department to register, he would meet with a police officer to provide the information required by the Illinois sex offender registration form, and the police officer would take down that information. (Ex. B, Kloepfer Dep. 10-11; Ex. C, Talbot Dep. 57-58; Ex. J, Gunty Dep. 55.)

21. Next, the sex offender's registration form is given to the Bolingbrook Police Department's Records Department. Once it receives the registration form, with the sex offender's information on it, the Records Department will complete the registration by entering the sex offender's information, as set out on the form, into the sex offender's LEADS file. (Ex. B, Kloepfer Dep. 10-11; Ex. C, Talbot Dep. 58; Ex. F. Teppel Dep. 92-94, 102-105; Ex. J, Gunty Dep. 55.)

22. Every time a sex offender comes in to register, the Bolingbrook Police Department prints out a LEADS report on the sex offender. (Ex. C, Talbot Dep. 58-61; Ex. I, Wlodarski Dep. 79-80; Ex. L, Coughlin Dep. 9.)

23. The LEADS report identifies the law enforcement agency with ownership of the sex offender's LEADS file. (Ex. C, Talbot Dep. 62; Ex. I, Wlodarski Dep. 86.)

24. The Bolingbrook Police Department cannot complete a SORA registration for a sex offender unless the Bolingbrook Police Department owns his LEADS file. (Ex. B, Kloepfer Dep. 21, 26; Ex. F, Teppel Dep. 94, 102-109, 113, 148-151.)

25. The Bolingbrook Police Department cannot obtain ownership of a sex offender's LEADS file unless the law enforcement agency that owns it, releases it. (Ex. B, Kloepfer Dep. 34; Ex. F, Teppel Dep. 105-109; Ex. I, Wlodarski Dep. 140-143.)

26. All the Bolingbrook Police Department can do for a sex offender who wants to register, but whose LEADS file is owned by another law enforcement agency, is update the LEADS file with a narrative describing the sex offender's attempt to register. The update does not complete the sex offender's registration or render him compliant with SORA. (Ex. F, Teppel Dep. 94, 102-105, 148-150.)

27. Plaintiff was not the first sex offender to seek to register at the Bolingbrook Police Department without first having his home law enforcement agency release his LEADS file. (Ex. B, Kloepfer Dep. 28-30, 53; Ex. F, Teppel Dep. 92-94, 102-109; Ex. I, Wlodarski Dep. 95-96.)

28. When a sex offender presents to register with the Bolingbrook Police Department for the first time, the Bolingbrook Police Department will contact the law enforcement agency that owns his LEADS file to request the release of the file. (Ex. B, Kloepfer Dep. 28-30, 53; Ex. F, Teppel Dep. 92-94, 102-109; Ex. I, Wlodarski Dep. 95-96.)

29. Alternatively, the Bolingbrook Police Department will direct the sex offender (who wants to register in Bolingbrook but whose LEADS file is owned by a different law enforcement agency) to return to his home law enforcement agency to request release his LEADS file. (Ex. B, Kloepfer Dep. 28-30, 53; Ex. F, Teppel Dep. 92-94, 102-109; Ex. I, Wlodarski Dep. 95-96.)

30. Once the LEADS file is released by the sex offender's home law enforcement agency, the Bolingbrook Police Department will take ownership of the file and register the sex offender pursuant to SORA. (Ex. B, Kloepfer Dep. 28-30, 53; Ex. F, Teppel Dep. 92-94, 102-109; Ex. I, Wlodarski Dep. 95-96.)

7

    **D.    Plaintiff's SORA registration on February 2, 2011, with the Joliet Police Department.**

    31.    On February 2, 2011, and at all relevant times, the Joliet Police Department owned Plaintiff's LEADS file. (Ex. F, Teppel Dep. 189; Ex. G, Landeros Dep. 224; Ex. I, Wlodarski Dep. 66.)

    32.    Pursuant to SORA, and because he was homeless in Joliet, Plaintiff was required to register with the Joliet Police Department every week. (Complaint ¶¶ 18, 20.)

    33.    On February 2, 2011, Plaintiff registered in person at the Joliet Police Department. (Complaint ¶ 34; Ex. A, Pl. Dep. 46.)

    **E.    Plaintiff's attempt to register in Bolingbrook on February 9, 2011, pursuant to SORA.**

    34.    On February 9, 2011, Plaintiff presented himself at the Bolingbrook Police Department to register pursuant to SORA. (Complaint ¶ 35; Ex. A, Pl. Dep. 57.)

    35.    Bolingbrook Police Officer Nicholas Schmidt met with Plaintiff to obtain the information required by the sex offender registration form. (Ex. D; Ex. M, Schmidt Dep. 30.)

    36.    Plaintiff said that he was homeless, and that, between February 2 and February 9, 2011, he had been living in a truck parked in Bolingbrook. (Ex. A, Pl. Dep. 55; Ex. D.)

    37.    Plaintiff identified his mailing address as Greg's Body Shop in Joliet. (Ex. D; Ex. M, Schmidt Dep. 37.)

    38.    After Officer Schmidt took down Plaintiff's SORA-required information, Officer Schmidt placed the registration form in a bin for Sergeant Brick to review and forward to the Records Department to enter the information on the form into LEADS. (Ex. I, Wlodarski Dep. 60-65; Ex. K, Brick Dep. 14; Ex. M, Schmidt Dep. 39.)

39. Sergeant Brick subsequently reviewed the February 9, 2011, registration form containing Plaintiff's information and turned it in to the Records Department. (Ex. K, Brick Dep. 14.)

40. When the Records Department tried to complete Plaintiff's registration by entering the information from the February 9, 2011, sex offender registration form into LEADS, the Records Department was unable to do so because the Bolingbrook Police Department did not own Plaintiff's LEADS file. (Ex. I Wlodarski Dep. 66, 104-107, 109.)

41. The Records Department printed a LEADS report on Plaintiff and learned that he had previously registered at the Joliet Police Department and it "owned" Plaintiff's LEADS file. (Ex. H, Avila Dep. 80; Ex. I, Wlodarski Dep. 66, 74, 149-150.)

42. As a result, on February 9 or 10, 2011, the Records Department contacted the Joliet Police Department to request that it release ownership of Plaintiff's LEADS file. (Ex. I, Wlodarski Dep. 66, 74, 96, 134-135, 137, 140-141; Ex. M, Schmidt Dep. 46-48.)

43. The Joliet Police Department did not release Plaintiff's LEADS file. The Joliet Police Department contended that Plaintiff lived within that law enforcement agency's jurisdiction. (Complaint ¶ 39; Ex. F, Teppel Dep. 110-111; Ex. G, Landeros Dep. 225-230, 255, 297-298; Ex. I, Wlodarski Dep. 97, 109-112, 114, 135; Ex. M, Schmidt Dep. 46-48.)

44. The Records Department advised the Bolingbrook Police Officers that the Joliet Police Department would not release Plaintiff's LEADS file because he lived in Joliet. (Ex. I, Wlodarski Dep. 97, 109-112, 114, 135.)

45. Because the Joliet Police Department did not release Plaintiff's LEADS file, the Bolingbrook Police Department could not obtain ownership of Plaintiff's LEADS file or complete

his February 9, 2011, SORA registration. (Ex. F, Teppel Dep. 105-109, 148-151, 189-190; Ex. I, Wlodarski Dep. 97, 99, 104-106, 125, 132, 139; Ex. J, Gunty Dep. 69-70, 72-74.)

46. Instead, the Records Department did the only thing that it could do: it entered an update to Plaintiff's LEADS file stating that he had presented at the Bolingbrook Police Department to register on February 9, 2011. (Ex. F, Teppel Dep. 106-109, 148-151, 190; Ex. I, Wlodarski Dep. 139-140.)

47. Because the Bolingbrook Police Department did not own Plaintiff's LEADS file, the Bolingbrook Police Department was unable to change Plaintiff's address from Joliet to Bolingbrook in the LEADS database. (Ex. I, Wlodarski Dep. 85, 138.)

48. Until it obtained ownership of Plaintiff's LEADS file, the Bolingbrook Police Department would remain unable to complete any future attempt by Plaintiff to register there pursuant to SORA. (Ex. F, Teppel Dep. 102-109, 157; Ex. I, Wlodarski Dep. 97, 99, 104-106, 125, 132, 139; Ex. J, Gunty Dep. 69-70, 72-74.)

49. The Bolingbrook Police Officers determined that Plaintiff could not register there pursuant to SORA until the Joliet Police Department released his LEADS file. (Ex. F, Teppel Dep. 102-110, 151, 155-157; Ex. I, Wlodarski Dep. 99, 104-106, 125, 132, 139; Ex. J, Gunty Dep. 72-74.)

**F.     Plaintiff's February 16, 2011, registration in Joliet pursuant to SORA.**

50. On February 16, 2011, Plaintiff registered in person as a sex offender at the Joliet Police Department. (Complaint ¶ 37; Ex. A, Pl. Dep. 46; Ex. G, Landeros Dep. 255.)

**G.     Plaintiff's attempt to register in Bolingbrook on February 16, 2011, pursuant to SORA.**

51.     Although he had already registered in Joliet on February 16, 2011, Plaintiff also attempted to register as a sex offender at the Bolingbrook Police Department that same day. (Complaint ¶¶ 40-41.)

52.     When Plaintiff returned to the Bolingbrook Police Department to register, Sergeant Brick advised him that he could not register there. (Ex. K, Brick Dep. 47.)

53.     Sergeant Brick asked Plaintiff questions about where he was living in Bolingbrook to elicit information which Plaintiff might use to establish for the Joliet Police Department that he had, in fact, moved his residence to Bolingbrook. (Ex. K, Brick Dep. 46-52, 62.)

54.     Sergeant Brick told Plaintiff that he must return to Joliet to sort out the reason that the Joliet Police Department insisted that he lived in Joliet. (Ex. K, Brick Dep. 46-52, 62-63.)

**H.     Plaintiff's attempt to register in Bolingbrook on February 23, 2011, pursuant to SORA.**

55.     Plaintiff returned to the Bolingbrook Police Department on February 23, 2011, and again attempted to register there pursuant to SORA. (Complaint ¶ 46.)

56.     The Joliet Police Department had not released its ownership of Plaintiff's LEADS file on February 23, 2011. (Ex. F, Teppel Dep. 151-161, 189; Ex. G, Landeros Dep. 224.)

57.     Detective Talbot met with Plaintiff and told him that he had to return to Joliet to register, and that he could not register in Bolingbrook. (Ex. C, Talbot Dep. 83.)

58.     When Plaintiff objected, Detective Talbot contacted the Illinois State Police on Plaintiff's behalf and explained the situation. Detective Talbot told the Illinois State Police that Plaintiff wanted to register in Bolingbrook, but the Joliet Police Department insisted that Plaintiff lived in Joliet. (Ex. C, Talbot Dep. 84-87.)

59. The Illinois State Police advised Detective Talbot not to register Plaintiff, and instead, to direct him to return to Joliet to register there. (Ex. C, Talbot Dep. 88.)

### III. Conclusion

60. At no point in February 2011, when Plaintiff was seeking to register in Bolingbrook, did the Joliet Police Department release Plaintiff's LEADS file. (Ex. F, Teppel Dep. 151-161, 189; Ex. G, Landeros Dep. 224.)

61. Prior to Plaintiff's attempts to register in February 2011, the Bolingbrook Police Department had never encountered a situation in which the law enforcement agency owning the sex offender's LEADS file did not release it when requested to do so by the Bolingbrook Police Department or the sex offender. (Ex. C, Talbot Dep. 28; Ex. F, Teppel Dep. 110-111; Ex. I, Wlodarski Dep. 148, 153; Ex. J, Gunty Dep. 81.)

62. The Bolingbrook Police Department has never registered a sex offender without owning his LEADS file. Sex offenders who have presented at the Bolingbrook Police Department to register pursuant to SORA, but whose LEADS files are owned by other law enforcement agencies, have not been registered in Bolingbrook. (Ex. B, Kloepfer Dep. 28-30, 53; Ex. F, Teppel Dep. 92-94, 102-109; Ex. I, Wlodarski Dep. 95-96.)

WHEREFORE, Defendants DETECTIVE JOSEPH BRICK, DETECTIVE SEAN TALBOT, and the VILLAGE OF BOLINGBROOK (erroneously sued as the BOLINGBROOK POLICE DEPARTMENT) respectfully request that this honorable Court grant their Amended Motion for Summary Judgment on All Counts of the Third Amended Complaint and such other and further relief as is just and appropriate.

        Respectfully submitted,

        DETECTIVE JOSEPH BRICK,
        DETECTIVE SEAN TALBOT AND THE
        VILLAGE OF BOLINGBROOK

By:  /s/ Stephen R. Miller
      Stephen R. Miller, One of Their Attorneys

Stephen R. Miller (6182908)
Nikoleta Lamprinakos (6274018)
M. Elysia Baker (6308530)
ROBBINS, SCHWARTZ, NICHOLAS,
  LIFTON & TAYLOR, LTD.
55 West Monroe, Suite 800
Chicago, Illinois  60603-5144
Telephone (312) 332-7760
Fax (312) 332-7768
smiller@robbins-schwartz.com
rlutner@robbins-schwartz.com
nlamprinakos@robbins-schwartz.com

**CERTIFICATE OF SERVICE**

      I hereby certify that I electronically filed the foregoing **Defendants Detective Brick, Detective Talbot, and the Village of Bolingbrook's Rule 56.1 Statement of Undisputed Material Facts in Support of Their Amended Motion for Summary Judgment on All Counts of the Third Amended Complaint** with the Clerk of the Court using the CM/ECF system on this 28th day of December, 2016, which constitutes service on all counsel of record, registered filing users, pursuant to Fed. R. Civ. P. 5(b)(2)(D) and L.R. 5.9.

                                                                s/ Stephen R. Miller
                                                                Stephen R. Miller